Opinion by Judge B. FLETCHER; Dissent by Judge N.R. SMITH.
OPINION
B. FLETCHER, Circuit Judge:
Appellant Arrow Financial Services (“Arrow”) appeals the district court’s decision, on summary judgment, that letters sent by Arrow to nearly 40,000 California residents constituted “false, deceptive, or misleading representation^] ... in connection with the collection of any debt” in violation of the federal Fair Debt Collection Practices Act (“FDCPA”), 15 U.S.C. § 1692e. It also appeals a jury’s award, after trial, of statutory damages under both the FDCPA and California’s Rosenthal Fair Debt Collection Practices Act (“Rosenthal Act”), California Civil Code § 1788 et seq. Arrow contends that the Rosenthal Act does not permit class actions, and that permitting class plaintiffs to recover statutory damages under both the FDCPA and Rosenthal Act violates the FDCPA. We have jurisdiction under 28 U.S.C. § 1291. We disagree with Arrow’s contentions and affirm the district court.
I.
Arrow Financial Services is a debt buyer and collector. It purchases consumer debts that have been written off by the original creditor. Most debt buyers acquire the debts for a fraction of the balance, but then attempt to collect the entire debt.[1] In 2002, Arrow purchased a portfolio of debts owed to health clubs. All of these debts were more than seven years old; accordingly, pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681c(a)(4), none of these debts could be reported to a credit reporting agency. They were, to use industry parlance, “obsolete.” Fed. Trade Comm’n v. Gill, 265 F.3d 944, 948 (9th Cir.2001) (citing 15 U.S.C. § 1681e(a)). As a general practice, Arrow does not report obsolete debts. In 2004, Arrow attempted to collect on this portfolio of debts by sending substantially identical letters to nearly 40,000 California residents. One of those residents was Johnny Gonzales, the named plaintiff in this action. The letter informed Mr. Gonzales that he owed a “PAST DUE BALANCE” to “Holiday Spa of Calif’. It stated:
Dear JONNY [sic] GONZALES,
At this time we are willing to settle your past due account for 50% of the full balance and accept this amount as settlement of the referenced account. The settlement amount must be made in one payment and received by our office on or before May 28, 2004.
* * * Settlement Amount $276.48 You Save $276.49 * * *
Upon receipt of the settlement amount and clearance of funds, and if we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled. Please mark the appropriate box below.
1. [ ] Enclosed find payment for the above-stated settlement amount. By depositing this payment in the *1060 sum of $276.48, you have accepted this as settlement. When my funds clear, and if you are reporting the account, you will notify the appropriate credit bureaus of this settlement.
Should you have any questions, please feel free to contact me----
Important notice required by law: This agency is engaged in the collection of debts. This communication is an attempt to collect a debt and any information obtained will be used for that purpose.
Finally, in bold letters, the letter instructed Gonzales to “Please see reverse side for important information.” The “important information” was the following: “NOTICE TO CALIFORNIA RESIDENTS: As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.” Id. at 90. All in all, the letter refers to credit bureaus three times. It twice states that if Arrow is reporting the debt, it will notify credit bureaus once the settlement funds clear, and also provides a notice that if a consumer fails to fulfill his credit obligations, negative information may be submitted to a credit reporting agency.
On receipt of the letter, Gonzales conducted an independent investigation and determined that Arrow could not legally report the debt to any credit bureau. On January 28, 2005, Gonzales filed suit on behalf of himself and a putative class, claiming violations of the FDCPA and the Rosenthal Act, because the letter would likely cause recipients to believe that their failure to pay the debts would result in negative credit reports. The district court certified a class to include 39,727 similarly situated Californians, and designated Gonzales as the class representative. On June 8, 2007, the district court granted summary judgment to Gonzales on the issue of liability under the FDCPA and the Rosenthal Act.
The district court then held a jury trial to determine the amount of damages. The court instructed the jury that class members could receive separate statutory damages pursuant to the FDCPA and the Rosenthal Act claims. The jury awarded Gonzales $250 on the FDCPA claim and an additional $250 on the Rosenthal Act claim. It awarded the class members $112,500 on the FDCPA claim and $112,500 on the Rosenthal Act claim. The total damages awarded were $225,500.
II.
We review the district court’s grant of summary judgment de novo. Travelers Cas. & Sur. Co. of Am. v. Brenneke, 551 F.3d 1132, 1135 (9th Cir.2009). Summary judgment is appropriate where “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R.Civ.P. 56. We review questions of law, including the district court’s interpretations of the FDCPA and the Rosenthal Act, de novo. Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1030 (9th Cir.2010).
III.
The FDCPA was enacted as a broad remedial statute designed to “eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.” 15 U.S.C. § 1692(e). The FDCPA comprehensively *1061 regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices. See, e.g., 15 U.S.C. §§ 1692b (governing the acquisition of location information), 1692e (prohibiting misleading or deceptive practices). The FDCPA does not ordinarily require proof of intentional violation, and is a strict liability statute. See McCollough v. Johnson, Rodenburg & Lauinger, LLC, 687 F.3d 939, 948 (9th Cir.2011). Though the Federal Trade Commission (“FTC”) is empowered to enforce the FDCPA, 15 U.S.C. § 1692Z, Congress encouraged private enforcement by permitting aggrieved individuals to bring suit as private attorneys general. Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir.2008). Prevailing plaintiffs, including class members, are entitled to actual damages, statutory damages, and attorney’s fees and costs. 15 U.S.C. § 1692k(a).
As relevant here, section 1692e of the FDCPA broadly prohibits the use of “any false, deceptive, or misleading representation or means in connection with the collection of any debt.” The Act includes a non-exhaustive list of examples of proscribed conduct, including:
(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
15 U.S.C. § 1692e.
“Whether conduct violates [§ 1692e] ... requires an objective analysis that takes into account whether the ‘least sophisticated debtor would likely be misled by a communication.’ ” Donohue, 592 F.3d at 1030 (quoting Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 934 (9th Cir.2007)); see also Swanson v. S. Or. Credit Serv., Inc., 869 F.2d 1222, 1227 (9th Cir.1988).[2] In this circuit, a debt collector’s liability under § 1692e of the FDCPA is an issue of law.[3] Terran v. Kaplan, 109 F.3d 1428, 1432 (9th Cir.1997).
The “least sophisticated debtor” standard is “lower than simply examining whether particular language would deceive or mislead a reasonable debtor.” Id. (in *1062 ternal quotation marks omitted). The standard is “designed to protect consumers of below average sophistication or intelligence,” or those who are “uninformed or naive,” particularly when those individuals are targeted by debt collectors. Duffy v. Landberg, 215 F.3d 871, 874-75 (8th Cir.2000) (internal quotation marks omitted); accord Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 774 (7th Cir.2007) (cautioning that “if the debt collector has targeted a particularly vulnerable group,” “the benchmark for deciding whether the communication is deceptive would be the competence of the substantial bottom fraction of that group”). At the same time, the standard “presences] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care.” Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir.2008) (internal quotation marks omitted). The FDCPA does not subject debt collectors to liability for “bizarre,” “idiosyncratic,” or “peculiar” misinterpretations. See id.; Strand v. Diversified Collection Serv. Inc., 380 F.3d 316, 318 (8th Cir.2004).
We reject Arrow’s arguments that its letters do not violate the FDCPA[4] and hold that, under the least sophisticated debtor standard, the letters are misleading and impliedly threaten to take action that cannot be legally taken.
A. Section 1692e(10)
Section 1692e(10), which prohibits “[t]he use of any false representation or deceptive means to collect ... any debt,” has been referred to as a “catchall” provision, and can be violated in any number of novel ways. Rosenau, 539 F.3d at 224. Nevertheless, it is well established that “[a] debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate.” Brown v. Card Serv. Ctr., 464 F.3d 450, 455 (3d Cir.2006) (internal quotation omitted); accord Kistner v. Law Offices of Michael P. Margelefsky, LLC, 518 F.3d 433, 441 (6th Cir.2008); Russell v. Equifax A.R.S., 74 F.3d 30, 34-35 (2d Cir.1996).
Arrow wisely concedes that it had no intention of reporting the health club debts to a credit bureau and was legally prohibited from so doing. It argues, though, that because the letters employ conditional language (“if we are reporting the account”), it is wholly unreasonable to infer that Arrow could or would report the account. We disagree. At the outset, we emphasize that a literally true statement can still be misleading. See, e.g., Brown, 464 F.3d at 455; Avila v. Rubin, 84 F.3d 222, 226-27 (7th Cir.1996). Arrow is also correct that faced with ambiguous language, an unusually savvy consumer (such as Gonzales) would seek clarification of whether his debt could be reported. We are not, however, to read the language from the perspective of a savvy consumer, and consumers are under no obligation to seek explanation of confusing or misleading language in debt collection letters. Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 566 (7th Cir.2004).
To the least sophisticated debtor, the phrase “if we are reporting the account, the appropriate credit bureaus will be noti *1063 fied that this account has been settled” suggests two possibilities. It suggests the possibility that Arrow was not reporting the debt to a credit reporting agency, and would accordingly make no further report in the event of settlement. But the phrase also suggests that, under some set of circumstances applicable to the recipient, Arrow could and would report the account.[5] Absent any possibility that Arrow could report the accounts, there would be no reason for Arrow to assert its intention to make a positive report in the event of payment. Only the first reading is actually correct, but the second reading is far from “bizarre” or “idiosyncratic” — it is eminently reasonable. As there is no circumstance under which Arrow could legally report an obsolete debt to a credit bureau, the implication that Arrow could make a positive report in the event of payment is misleading.
The misleading nature of the “if we are reporting the debt” clause is compounded by the fact that Arrow did nothing to clarify when it could report a debt. Where the law places affirmative limits on a debt collector’s actions, the debt collector that “goes perilously close to an area of proscribed conduct takes the risk” that it will be liable under the FDCPA for misleading consumers. Swanson, 869 F.2d at 1228. When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril. See Evory, 505 F.Sd at 778-79 (noting that debt collectors could protect the unsophisticated consumer against falsely believing a set-offer is time-sensitive and non-renewable by including clarifying language to the effect of: “We are not obligated to renew this offer.”); cf. Greco v. Trauner, Cohen & Thomas, L.L.P., 412 F.Sd 360, 364-65 (2d Cir.2005) (reiterating that “a letter sent on law firm letterhead, standing alone ” represents that an attorney has been meaningfully involved in the collection process, but holding that impression was cured by a “clear disclaimer explaining the limited extent of [the attorneys’] involvement in the collection of [the recipient’s] debt”).
Conditional language, particularly in the absence of any language clarifying or explaining the conditions, does not insulate a debt collector from liability. Cf. LeBlanc, 601 F.3d at 1196 (rejecting a debt collector’s reliance on the use of conditional language “in an effort to safeguard the letter from being construed as ‘threatening”’). We decline to adopt Arrow’s “hyper-literal” approach, which would permit it to “undermine the consumer protection goals of the statute” through a “flimsy disguise” of conditional language. Nat'l Fin. Serv., 98 F.3d at 137-138. The phrase “if we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled” is misleading, and violates 15 U.S.C. § 1692e(10). Cf. Brown, 464 F.3d at 455.
B. Section 1692e(5)
We turn next to the question of whether the letters also violate section *1064 e(5).[6] Section 1692e(5) prohibits a debt collector from making a “threat to take any action that cannot legally be taken or that is not intended to be taken.” 15 U.S.C. § 1692e(5). Whether Arrow’s letters could be construed by the least sophisticated debtor as threatening to report obsolete debt (when Arrow had no ability or intention to do so) presents a closer question. The letters are not overtly threatening. Nevertheless, a threat need not be express: it can be implied.
We are persuaded that Arrow’s letters, read as a whole, would be interpreted by the least sophisticated debtor as threatening to report (or continue to report) obsolete debts. Arrow argues that the letters promise only to make a “positive” report indicating full payment of the debt once payment cleared, and thus could not reasonably be read to imply a threat to make a “negative” report in the event of nonpayment. This argument fails. Setting aside the fact that Arrow could not legally make any report on these obsolete debts,[7] Arrow could only make a “positive” report if it had already placed, or would shortly place, a report of the obsolete debt in the debt- or’s file. Such a report would be “negative” — it would show that the debt was delinquent and unpaid. Indeed, Arrow specifically informed consumers in one of its letters that a “negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.”
Logically, if Arrow failed to make a “positive” report indicating that the debt was satisfied, the “negative” report would remain on the debtor’s record. In other words, the failure to make a positive report on an existing debt is the functional equivalent of a negative report. The least sophisticated debtor could conclude that, unless he paid the settlement amount or the full amount of the debt, Arrow would place a negative record in his credit report, or would decline to remove the negative record already in place. This reading is not bizarre or idiosyncratic. Accordingly, we hold that Arrow violated 15 U.S.C. § 1692e(5). We affirm the district court’s grant of partial summary judgment for Gonzales on the FDCPA claim.
IV.
Arrow also contends that the district court erred in instructing the jury that it could make separate awards of statutory damages under both the FDCPA and Rosenthal Act. It argues that the Rosenthal Act does not permit class actions. It also contends, in the alternative, that permitting class recovery under the FDCPA and the Rosenthal Act contradicts the spirit of the FDCPA. Arrow is wrong on both counts.
*1065 A. Class Actions Under the Rosenthal Act
As originally enacted, the Rosenthal Act did not permit class actions. Rather, it provided that “any debt collector who willfully and knowingly violates this title with respect to any debtor shall ... be liable to the debtor only in an individual action ... for a penalty ... not [ ] less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000).” Cal. Civ. Code § 1788.30(b). In 1999, however, the California legislature amended the Rosenthal Act to permit class actions.
The 1999 amendment states:
Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.
Cal. Civ. Code § 1788.17 (emphasis added). Section 1692k of the FDCPA provides for class recovery of (1) actual damages up to $1,000 and (2) statutory damages not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector. 15 U.S.C. § 1692k(a)(2).
By use of the phrase “notwithstanding any other provision,”[8] the 1999 amendment unambiguously supercedes any provision of the Rosenthal Act inconsistent with the referenced provisions of the FDCPA, including those subjecting debt collectors to class actions. The 1999 amendment did not delete the “individual action” provision, but by permitting class actions, it nullified the provision’s effect. Further, the legislative history contains ample evidence that the 1999 amendment was intended to permit class actions. The Bill Analysis prepared by the California Senate Judiciary Committee stated that existing law “does not provide for class actions” and that “absent the threat of a class action, there is no incentive to abort an illegal continuing course of conduct.” S. Judiciary Comm., Report on A.B. 969 at 2, 4 (Cal. 1999-2000).[9] It explained that the 1999 amendments “would provide that violators shall be subject to the remedies . in [the FDCPA, including] ... [a]ll actual damages and an amount not to exceed the lesser of up to $500,000 or 1 percent of the net worth penalty together with costs of suit and attorney’s fees to the prevailing plaintiff(s) for class actions.” Id. at 2-3 (emphasis added). Similarly, the Bill Analysis prepared by the Assembly Committee on Banking and Finance notes that the bill “subjects debt collectors to the remedies of actual damages and up to $1,000 for an individual and/or for violation affecting a class composed of numerous debtors.” Ass. Comm, on Banking and *1066 Finance, Report on A.B. 969, at 1-2 (Cal. 1999-2000) (emphasis added).[10]
Every court to have considered the issue has held that class actions may proceed under the amendment to the Rosenthal Act, notwithstanding the contradictory “individual action” language in § 1788.30. See Palmer v. Stassinos, 233 F.R.D. 546, 548 (N.D.Cal.2006); Abels v. JBC Legal Grp., P.C., 227 F.R.D. 541, 548 (N.D.Cal.2005); Edstrom v. All Servs. & Processing, No. C04-1514 BZ, 2005 WL 645920, at *4 (N.D.Cal. Feb. 22, 2005); McDonald v. Bonded Collectors, LLC, 233 F.R.D. 576, 577 (S.D.Cal.2005). In addition, although not expressly considering the issue, this court and at least two California courts have entertained class actions brought under the Rosenthal Act. See Irwin v. Mascott, 370 F.3d 924, 927-28 (9th Cir.2004); Fireside Bank v. Super. Ct., 40 Cal.4th 1069, 56 Cal.Rptr.3d 861, 155 P.3d 268, 271 (2007); Asset Acceptance, LLC v. Hanson, No. B208548, 2009 WL 840047 (Cal.Ct. App. Apr. 1, 2009). In light of the clear statutory language, unequivocal legislative history, and the unanimous agreement of the courts, we hold that the Rosenthal Act permits class actions.
B. Cumulative Recovery under the FDCPA and the Rosenthal Act
Arrow argues, in the alternative, that plaintiffs are precluded from recovering statutory damages under both the FDCPA and the Rosenthal Act. Its argument contravenes the plain language of both acts, and ignores the many courts that have permitted simultaneous recovery under both acts.[11]
Federal law preempts state law in three circumstances:
Congress can define explicitly the extent to which its enactments pre-empt state law.... Second, in the absence of explicit statutory language, state law is preempted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively.... Finally, state law is preempted to the extent that it actually conflicts with federal law.
English v. Gen. Elec. Co., 496 U.S. 72, 79-80, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (citations omitted). The FDCPA states explicitly:
This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is *1067 greater than the protection provided by this subchapter.
15 U.S.C. § 1692n. This language, coupled with the FDCPA’s express purpose to “promote consistent State action,” 15 U.S.C. § 1692(e), establishes that Congress did not intend the FDCPA to preempt consistent state consumer protection laws.[12] Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (“the purpose of Congress is the ultimate touchstone in every preemption case”) (internal quotation marks, alteration, and citation omitted). Statutory damages under the FDCPA are intended to “deter violations by imposing a cost on the defendant even if his misconduct imposed no cost on the plaintiff.” Crabill v. Trans Union, L.L.C., 259 F.3d 662, 666 (7th Cir.2001). State laws permitting plaintiffs to recover additional statutory damages increase deterrence, thus affording greater protections to consumers and operating consistently with the FDCPA. See 15 U.S.C. § 1692n. Accordingly, we presume that the FDCPA permits plaintiffs to recover additional damages under state law.
Similarly, the Rosenthal Act does not limit recovery simply because it is also available under federal law. The Rosenthal Act specifically provides that its remedies are intended to be “cumulative and ... in addition to any other ... remedies under any other provision of law.”[13] Cal. Civ. Code § 1788.32.[14] In an analogous case, the Eleventh Circuit held that a Florida consumer protection statute, which *1068 stated that its remedies were “cumulative,” “contemplated dual enforcement — that an out of state debt collector could quite possibly be subject to the sanctions and enforcement provisions of both of the various states or the FDCPA.” LeBlanc, 601 F.3d at 1192 (internal quotation marks omitted).
Arrow argues that, notwithstanding the language of the FDCPA and the Rosenthal Act, permitting plaintiffs to recover under both statutes would (1) run afoul of the “general proposition that a plaintiff may not receive multiple awards for the same item of damage” and (2) contravene the FDCPA’s implied limit on double recovery.
We readily dispense of the first argument, because the authority cited by Arrow for the proposition that “as a general rule, a plaintiff may not receive multiple awards for the same item of damage” is distinguishable. The general rule is that plaintiffs may not recover for the same loss in both contract and in tort. See, e.g., Ambassador Hotel Co. v. WeiChuan Invest., 189 F.3d 1017, 1032 (9th Cir.1999). These common law principles are wholly inapplicable to the statutory damage provisions of the FDCPA and Rosenthal Act. Statutory damages under both provisions are not tied in any way to actual losses suffered by the plaintiff. See 15 U.S.C. 1692k(b); CAL. CIV. CODE § 1788.17. Moreover, we cannot reject the statutory text in order to imply common law limitations, particularly “where, as here, the statute’s language is plain, [and] the sole function of the courts is to enforce it according to its terms.” Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 229-30 (4th Cir.2007) (rejecting the district court’s attempt to graft principles of common law witness immunity onto attorney communications under the FDCPA) (quoting United States v. Ron Pair Enters., 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).
We also reject Arrow’s argument that recovery under state and federal law contravenes the FDCPA’s implied ban on cumulative recovery. Simply put, there is nothing in the FDCPA from which to imply a per se prohibition on class recovery under both state and federal law. The only limit on class recovery under the FDCPA is that statutory damages for the class cannot exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector. 15 U.S.C. § 1692k. This limit is intended to ensure that “punishment [is] meted out according to a business’s ability to absorb the penalty.” Sanders v. Jackson, 209 F.3d 998, 1002 (7th Cir.2000).[15] Those concerns are not at issue in this case. Here, the total damages awarded were $225,500: significantly less than the statutory limit. In this case, permitting recovery under the Rosenthal Act and the FDCPA is not inconsistent with section 1692k of the FDCPA.[16]
*1069 V.
In adopting the FDCPA, Congress emphasized that “[m]eans other than misrepresentation and other abusive debt collection practices are available for the effective collection of debts.” 15 U.S.C. § 1692(b). We hold that letters, which misleadingly implied that Arrow had the ability to report obsolete debts to credit bureaus, and impliedly threatened to make such reports, violated sections 1692e(5) and e(10) of the FDCPA. We recognize that the FDCPA does not pre-empt consistent state action, including cumulative recovery of statutory damages under state law. The Rosenthal Act’s remedies are cumulative, and available even when the FDCPA affords relief. In light of these holdings, we AFFIRM the district court.

. See Robert M. Hunt, Collecting Consumer Debt in America, Fed. Res. Bank of PA Bus. Rev. 15 (2007) (estimating that the average price for purchase of an obsolete debt at $0,045 per dollar), available at http://www. philadelphiafed.org/research-and-data/ publications/business-review/2007/q2/hunt_ collecting-consumer-debt.pdf; see also Adam J. Levitin, Hydraulic Regulation: Regulating Credit Markets Upstream, 26 Yale J. Reg. 143, 192 (2009) (noting the sizeable growth in the debt buying industry).

. The "least sophisticated debtor” or "least sophisticated consumer” standard is employed by the majority of the circuits. See Chaudhry v. Gallerizzo, 174 F.3d 394, 408 (4th Cir.1999); Campuzano-Burgos v. Midland Credit Mgmt. Inc., 550 F.3d 294, 298 (3d Cir.2008); Hartman v. Great Seneca Fin. Corp., 569 F.3d 606, 611-12 (6th Cir.2009), cert. denied, — U.S. -, 130 S.Ct. 1688, 176 L.Ed.2d 180 (2010); Gonzalez v. Kay, 577 F.3d 600, 607 (5th Cir.2009), cert. denied, U.S. -, 130 S.Ct. 1505, 176 L.Ed.2d 110 (2010); Ellis v. Solomon & Solomon P.C., 591 F.3d 130, 132 (2d Cir.2010), cert denied - U.S. -, 130 S.Ct. 3333, 176 L.Ed.2d 1223 (2010); LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193 (11th Cir.2010).
The Seventh Circuit employs an "unsophisticated debtor” standard, which appears to differ from the majority test only in semantics. See Chuway v. Nat’l Action Fin. Serv. Inc., 362 F.3d 944, 948-49 (7th Cir.2004) (noting that the least-sophisticated consumer is the "single most unsophisticated consumer who exists” and arguing that the "more precise benchmark” is the understanding of the “unsophisticated debtor”) (citations and quotations omitted); Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir.2002) (describing both tests).

. Because liability under § 1692e is an issue of law, Arrow’s argument that this court should remand for a jury trial on liability necessarily fails. We recognize that in other circuits, whether a communication is likely to mislead the least-sophisticated debtor is an issue of fact. See, e.g., Walker v. Nat’l Recovery, Inc., 200 F.3d 500, 503 (7th Cir.1999); Gonzalez, 577 F.3d at 607.

. Arrow does not appeal the district court’s determination that the letters violate the Rosenthal Act. Accordingly, we need not decide whether the Rosenthal Act’s protections are fully co-extensive with the FDCPA. See Cal. Civ. Code § 1788.17 (incorporating by reference the prohibitions in 15 U.S.C. § 1692e) (West 2009); Cal. Civ. Code § 1788.13(f) (West 2009) (prohibiting the false representation that information concerning a debt is about to be reported to a consumer reporting agency).

. Cf. Ruth v. Triumph P'ships, 577 F.3d 790, 801-02 (7th Cir.2009) (holding that a notice claiming a right to collect and/or share information about the debtor "to the extent permitted by law” was misleading because there are no circumstances under which the law actually permits dissemination of a debtor’s information); Bentley v. Great Lakes Coltection Bureau, 6 F.3d 60, 61-63 (2d Cir.1993) (holding that letters stating "were our client to retain legal counsel in your area, and it was determined that suit should be filed against you, it could result in a judgment” conveys the erroneous impression that the debt collector had the authority to decide to institute legal action).

. We address each provision separately because, while a violation of section e(5) is a per se violation of section e(10), the reverse is not true. A "threat” to take legal action that a debt collector has no intention (or ability) to take is necessarily deceptive or misleading, but not all deceptive or misleading statements constitute threats actionable under section e(5). See Ruth, 577 F.3d at 802 (recognizing that a statement which violates e(5) also violates e(10)); Brown, 464 F.3d at 455 (expressing no opinion about whether a letter constitutes a threat under § 1692e(5) but holding that the letter could be a deceptive or misleading communication in violation of § 1692e(10)).
We also note that Gonzales need not establish a violation of each provision of the FDCPA cited. Violation of a single provision is sufficient to establish liability. Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir.1993).

. We emphasize that the least sophisticated consumer would be unaware of this fact, given that the letters misleadingly imply that Arrow has the ability to report the obsolete debts to credit bureaus.

. California courts have routinely concluded that the phrase "notwithstanding any other provision” plainly and unambiguously super-cedes contrary provisions. See, e.g., People v. Palacios, 41 Cal.4th 720, 62 Cal.Rptr.3d 145, 161 P.3d 519, 523-24 (2007) (the phrase "notwithstanding any other provision" is "broad,” “plain,” and "means what it says”); People ex rel. Lockyer v. Fremont Gen. Corp., 89 Cal.App.4th 1260, 1266, 108 Cal.Rptr.2d 127 (2001) (stating that legislative intent in adopting the term "notwithstanding any other provision” was "plain.”); People v. Hutchins 90 Cal.App.4th 1308, 1313, 109 Cal.Rptr.2d 643 (2001) (the language operates "clearly and unambiguously”); People v. Navarro, 126 Cal.App.3d 785, 793, 179 Cal.Rptr. 118 (1981) (calling the phrase an “absolutely plain, clear mandate”).

. Available at http://www.leginfo.ca.gov. Select the 1999-2000 legislative session in the drop-down list, and type "AB 969” to search. On the results page, select the "Papan” bill. Then, under the heading "Analyses,” click the link to “Senate Committee.”

. Available at http://www.leginfo.ca.gov. Select the 1999-2000 legislative session in the drop-down list, and type "AB 969” to search. On the results page, select the "Papan” bill. Then, under the heading "Analyses,” click the link to "Assembly Committee.”

. See, e.g., Costa v. Nat'l Action Fin. Serv., 634 F.Supp.2d 1069, 1077 (E.D.Cal.2007); Panahiasl v. Gurney, No. 04-04479 JF, 2007 WL 738642 (N.D.Cal. Mar. 8, 2007); Adams v. CIR Law Offices, LLP, No. 07-cvl041-IEG(LSP), 2007 WL 2481550 (S.D.Cal. Aug. 29, 2007); cf. Alkan v. Citimortgage, 336 F.Supp.2d 1061, 1065 (N.D.Cal.2004) (holding the 1999 amendment to the Rosenthal Act was not preempted by the FDCPA). But see Mejia v. Marauder Corp., No. C06-00520 HRL, 2007 WL 806486, (N.D.Cal. Mar. 15, 2007) (doubting whether additional damages were available under the Rosenthal Act but denying the award because it was not warranted under the circumstances). Most of these cases involve individual plaintiffs, rather than classes, but that difference is not dispositive to the overall preemption analysis.

. In addition, the legislative history strongly indicates that Congress intended to subject debt collectors to liability under both federal and state law. The Senate Report on the FDCPA, prepared by the Committee on Banking, Housing, and Urban Affairs, states that the Committee "believes that this law ought not to foreclose the States from enacting or enforcing their own laws regarding debt collection.” S. REP. 95-382 at 6 (1977), 1977 U.S.C.C.A.N. 1695, 1700. The Committee recognized that "States with substantially similar laws may be exempted from the act's requirements (but not its remedies) by applying to the Federal Trade Commission.” Id. (emphasis added); see also 15 U.S.C. § 1692o (permitting the FTC to exempt debt collectors from the obligations of the FDCPA when operating in states which have substantially similar laws). This implies that, even if a state law and the FDCPA punish identical behavior in identical ways, debt collectors should be subject to liability under both.

. The dissent argues that the California legislature "replaced” this provision when it incorporated the FDCPA’s remedies provision. Dissent at 1070. Incorporation by reference adds statutory text to the existing statute. See Don v. Pfister, 172 Cal. 25, 155 P. 60, 61 (1916); In re Burke, 190 Cal. 326, 212 P. 193, 193 (1923). It does not necessarily repeal or “replace” already existing statutory text. The dissent’s position rests on the supposition that by including the term "notwithstanding any other provision,” the California legislature intended to repeal all of the Rosenthal Act's remedies provisions, whether or not those provisions are inconsistent with the text incorporated from the FDCPA. This position finds no support in California law. Rather, only contradictory law is superceded by the term, "notwithstanding any other provision." See Bd. of Supervisors v. Super. Ct., 23 Cal.App.4th 830, 841, 28 Cal.Rptr.2d 560 (1994) (finding that a statute prefaced by "notwithstanding any other provision of law” "must prevail over directly contradictory provisions in other statutes”). The California legislature’s incorporation of section 1692k did not supercede the Rosenthal Act’s cumulative remedies provision because it is not contradictory to section 1692k. Although there is a potential inconsistency in cases where a cumulative award exceeds the FDCPA’s damages limit, that issue is not presented here.

.Arrow cites several cases prohibiting "duplicative recovery” under the FDCPA and state consumer protection statutes. Those cases are easily distinguishable, as each of them involves a state statute that expressly prohibits cumulative recovery. See, e.g., Piper v. Portnoff Law Assoc., 216 F.R.D. 325, 328 (E.D.Pa.2003) (citing 73 Pa. Stat. § 2270.5(c)).

. The dissent characterizes the FDCPA's "protective cap on statutory damages" as a limit on "double" or "duplicative” statutory damages awards. See e.g., Dissent at 1069, 1070-71. We agree that the FDCPA places a monetary limit on statutory damages. A monetary limit, however, is not the same thing as a prohibition on "duplicative awards” under complementary state and federal statutes. The FDCPA limits the total amount of damages a defendant may be required to pay; it does not bar recovery of damages under multiple statutes so long as the total award is below the monetary limit. The total damages award in this case is well below the FDCPA's monetary limit of $500,000 or one percent of the debt collector’s net worth.

. We express no opinion on whether the FDCPA might preempt in part (as inconsistent with § 1692k(a)(2)(c)) class recovery under federal and state law when the total statutory damages exceed $500,000 or one percent of the debt collector’s net worth.