**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PATRICIA ARELLANO,
   *Plaintiff-Appellant*,

   v.

CLARK COUNTY COLLECTION
SERVICE, LLC; BORG LAW GROUP,
LLC,
   *Defendants-Appellees.*

No. 16-15467

D.C. No.
2:15-cv-01424-
JAD-NJK

OPINION

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted June 5, 2017
Pasadena, California

Filed November 17, 2017

Before: Sidney R. Thomas, Chief Judge, Stephen
Reinhardt, Circuit Judge, and Edward R. Korman,[*]
District Judge.

Opinion by Chief Judge Thomas

---

[*] The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

## SUMMARY[**]

**Fair Debt Collection Practices Act**

The panel reversed the district court's dismissal of an action brought against a debt collector under the Fair Debt Collection Practices Act.

The panel held that a debt collector cannot avoid liability under the FDCPA by obtaining the debtor's lawsuit through a state court writ of execution. The panel concluded that such a procedure frustrates the Act's purpose and is thus conflict-preempted. The panel remanded the case for further proceedings.

## COUNSEL

Deepak Gupta (argued), Richard J. Rubin, and Neil K. Sawhney, Gupta Wessler PLLC, Washington, D.C.; Keren E. Gesund, Gesund & Pailet LLC, Las Vegas, Nevada; for Plaintiff-Appellant.

Patrick J. Reilly (argued), Holland & Hart LLP, Las Vegas, Nevada, for Defendants-Appellees.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

THOMAS, Chief Judge:

Can a debt collector avoid liability under the Federal Fair Debt Collection Practices Act by obtaining the debtor's lawsuit through a writ of execution?  We conclude that such a procedure frustrates the Act's purpose and is thus preempted.

I

Patricia Arellano was overdue on a small amount of medical debt—$371.89 to be precise.  A private collection agency, Clark County Collection Services, sent her a letter about it.  Included with the letter was a summons and state justice court complaint seeking collection of the debt.  The complaint itself stated that Arellano could "[d]ispute the validity of this debt" within 30 days, but that failing to do so would result in a presumption of validity.  However, separately, in small print, the summons indicated that to defend the lawsuit, Arellano must file a formal written response with the court within 20 days.

Arellano did not file a response, and the collection agency obtained a default judgment against her in justice court for $793.39.  The debt had doubled in the intervening month because it now included costs, pre-judgment interest, and attorney fees.

Subsequently, Arellano filed suit against the collection agency and its law firm under the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. § 1692 *et seq*.  She claimed that they had engaged in misleading

practices under 15 U.S.C. § 1692e(1) by stating that the debtor could dispute the debt within 30 days of receipt, when the actual summons required the filing of an answer in court within 20 days. She further alleged that Clark County Collection Services' name impermissibly implied affiliation with the Clark County government, violating 15 U.S.C. § 1692e(1).

The collection agency countered with a bold gambit. Armed with its default judgment, it requested the justice court to issue a writ of execution against Arellano in the amount of $826.72, an increased amount reflecting additional costs. Like most states, Nevada allows courts to authorize a sheriff to levy on the property of a judgment debtor to satisfy a judgment. *Butwinick v. Hepner*, 291 P.3d 119, 121 (Nev. 2012). With some exceptions not relevant here, the property subject to a writ of execution in Nevada includes a "right to bring an action to recover a debt, money, or thing." *Gallegos v. Malco Enters. of Nev.*, 255 P.3d 1287, 1289 (Nev. 2011) (quoting Black's Law Dictionary 1617, 275 (9th ed. 2009)).

Thus, the collection agency's strategy in seeking the writ was not to obtain personal property to satisfy the judgment, but to acquire the rights to Arelleno's FDCPA lawsuit against the agency so it could have it dismissed.

The justice court granted the writ, which directed the Clark County Sheriff "to satisfy this judgment with interest and costs as provided by law, out of the personal property of the judgment debtor." The writ described the targeted property as all "claims for relief, causes of action, things in action, and choses in action in any lawsuit pending in Nevada including, the rights of Patricia Arellano, in the civil action" pending against the collection agency and its lawyers.

Thereafter, pursuant to the writ of execution, the sheriff sold Arellano's lawsuit in an auction sale on the Clark County courthouse steps.  Clark County Collection Services bought the claims against itself for $250.

After buying Arellano's lawsuit, the collection agency moved in federal district court to dismiss the lawsuit, arguing that Arellano "no longer possesse[d] any rights of action in this case, and no longer possesse[d] any standing to sue." The district court dismissed Arellano's cause of action.

II

State law can be preempted in three circumstances pursuant to the Supremacy Clause, U.S. Const., Art. VI, cl. 2. *English v. Gen. Elec. Co.*, 496 U.S. 723, 78 (1990).  Only the third circumstance is relevant here: "state law is pre-empted to the extent that it actually conflicts with federal law." *Id.* at 79.  This conflict occurs when "the operation of state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,'" *In re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1045–46 (9th Cir. 2001) (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 479 (1974)), or when it "interferes with the methods by which the federal statute was designed to reach [its] goal," *Int'l Paper Co. v. Ouellette*, 497 U.S. 481, 494 (1987).  In other words, state law is preempted when "under the circumstances of the particular case," it stands as an obstacle to Congressional purpose "—whether that 'obstacle' goes by the name of 'conflicting; contrary to; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; interference,' or the like." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000) (alterations omitted) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

Federalism requires that we assume federal law was not intended to supersede the states' historic police powers "unless that was the clear and manifest purpose of Congress." *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2188 (2014). Although we read even express preemption provisions narrowly, a state cannot avoid compliance with a federal regime "merely by relying upon a connection to an area of traditional state regulation." *Wos v. E.M.A.*, 568 U.S. 627, 1400 (2013).[1]

## A

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). "The FDCPA was enacted as a broad remedial statute designed to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Gonzales v. Arrow Fin. Servs., LLC*,

---

[1] In *Boggs v. Boggs*, 520 U.S. 833 (1997), the Supreme Court analyzed the intersection of the Employee Retirement Income Security Act of 1974 ("ERISA") and Louisiana's community property law. That case illustrates both the potential for narrow preemption as well as the primacy of federal law even in areas of traditional state regulation. Simply finding a conflict between the two legal regimes was sufficient to resolve the case in favor of preemption. *Id.* at 841. But, of course, preemption only applied insofar as the community property law elevated a descendant's property interest over an ERISA plan participant's interest in a way that was incongruous with Congress's intention to preserve the economic security of a surviving spouse. *See id.* at 843–44. In the same way, preemption in this case applies only to Nevada's claim execution law insofar as it permits debt collectors to execute on FDCPA claims.

660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)).  The Act's purpose is "to protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive debt collection practices."  *Guerrero v. RJM Acquisitions, LLC*, 499 F.3d 926, 938 (9th Cir. 2007) (citing S. Rep. 95–389, at 2, 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1696, 1699).  And the "FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous."  *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318–19 (2d Cir. 1993)).

In order to achieve these goals, the Act regulates communication between debt collectors and debtors, 15 U.S.C. §§ 1692b, c, g, and creates a federal cause of action for debtors under 15 U.S.C. § 1692k.  Debt collectors may be subject to civil liability for engaging in harassment or abuse, 15 U.S.C. § 1692d, making false or misleading representations of various sorts, 15 U.S.C. §§ 1692e, j, or engaging in unfair practices while attempting to collect debt, 15 U.S.C. § 1692f.  The FDCPA also includes an express preemption and savings clause:

> This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.  For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law

affords any consumer is greater than the protection provided by this subchapter.

15 U.S.C. § 1692n.

To enforce the FDCPA, Congress chose "a private attorney general approach." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (citing *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995)); *see also Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) (noting that it was "Congress's intent that the Act should be enforced by debtors acting as private attorneys general."). "Prevailing plaintiffs . . . are entitled to actual damages, statutory damages, and attorney's fees and costs." *Gonzales*, 660 F.3d at 1061 (citing 15 U.S.C. § 1692k(a)).

## B

The collection agency argues that because the FDCPA does not speak directly to the execution of claims, there can be no federal preemption. This argument denies the existence of conflict preemption. "And conflict preemption . . . turns on the identification of 'actual conflict,' and not on an express statement of pre-emptive intent." *Geier*, 529 U.S. at 884. Indeed, "the Court has never before required a specific, formal agency statement identifying conflict in order to conclude that such a conflict in fact exists." *Id.*

Where the Act "itself does not speak directly to the issue, the Court must be guided by the goals and policies of the Act in determining whether it in fact pre-empts an action based on the law of an affected State." *Int'l Paper Co.*, 479 U.S. at 493. Just as in *International Paper Co.*, the federal law in question directly regulates the substantive law at issue (debt

collection practices) and specifically empowers debtors to bring suit against debt collectors. 15 U.S.C. § 1692i; *see Int'l Paper Co.*, 479 U.S. at 495 (holding that Vermont nuisance law was preempted to the extent that it conflicted with water pollution standards set forth in the Clean Water Act). And while the Act itself need not "speak directly to the issue," *Int'l Paper Co.*, 479 U.S. at 493, the FDCPA does expressly preempt state laws "to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency," 15 U.S.C. § 1692n.

In addition to evading liability and preventing Arellano from pursuing her potential federal claims, the collection agency has literally used the execution mechanism to collect debt from Arellano, and argues that she "has received the benefit of [the $250] reduction in her judgment." But a debt collector cannot be allowed to use state law strategically to execute on a debtor's FDCPA claims against it under the guise of legitimate debt collection. Though the FDCPA does preserve debt collectors' rights to collect what they are owed, the Act does not "authorize the bringing of legal actions by debt collectors." *See* 15 U.S.C. § 1692i(b). Debt collectors cannot evade the restrictions of the Act by forcing a debtor's claims to be auctioned, acquiring the claims, and dismissing them. To allow otherwise would thwart enforcement of the FDCPA and undermine its purpose. *See* 15 U.S.C. §§ 1692k, l.

## C

Resolving this case does not require any additional or supplemental rule beyond the text of the Act. A state remedy of execution cannot be used for the purpose of avoiding the impact of federal law. Therefore, we reverse the district

court, and remand for proceedings consistent with this opinion, holding that federal law preempts a private party's use of state execution procedures to acquire and destroy a debtor's FDCPA claims against it.  We need not, and do not, reach any other issue urged by the parties.

**REVERSED AND REMANDED.**